Brook B. Bond (Cal. Bar No. 144815)
bbond@parsonsbehle.com
PARSONS BEHLE & LATIMER
800 W. Main Street, Suite 1300
Boise, ID 83702
Telephone: (208) 562-4900
Facsimile: (208) 562-4901

Attorney for Defendants
Ignition Wireless, LLC and Norman LeMay

UNITED STATES DISTRICT COURT FOR THE

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOBILE NET POSA, INC., a California Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>IGNITION WIRELESS, LLC, a Washington Limited Liability Company; NORMAN LEMAY, an individual; and DOES 1 through 30, inclusive,<br><br>    Defendants. | Case No. 2:16-cv-8240<br><br>DEFENDANTS IGNITION WIRELESS, LLC AND NORMAN LEMAY'S ANSWER TO COMPLAINT FOR DAMAGES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT AGAINST THIRD-PARTY DEFENDANTS |
| IGNITION WIRELESS, LLC, a Washington Limited Liability Company; NORMAN LEMAY, an individual,<br><br>    Counterclaimant/<br>    Third-Party Plaintiff,<br><br>v.<br><br>MOBILE NET POSA, INC.; AVI SHAROZ YROSHALMIANE; and DOES 1 through 10, inclusive,<br><br>    Counterdefendant and<br>    Third-Party Defendants, | |

PARSONS BEHLE & LATIMER
800 W. Main Street
Suite 1300
Boise, ID 83702
O: (208) 562-4900
F: (208) 562-4901

DEFENDANTS IGNITION WIRELESS, LLC AND NORMAN LEMAY'S ANSWER TO COMPLAINT FOR DAMAGES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT AGAINST THIRD-PARTY DEFENDANTS - 1

Defendants Ignition Wireless, LLC and Norman LeMay (collectively, "Defendants"), by and through their undersigned counsel of record, hereby respectfully submit this Answer to Complaint for Damages, Counterclaims, and Third-Party Complaint.

## DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT

### PARTIES

1. Admitted.

2. Admitted.

3. Admitted.

4. Paragraph 4 contains only legal conclusions and therefore does not require a response. To the extent a response is required, the allegations in Paragraph 4 are denied.

5. Denied.

### JURISDICTION AND VENUE

6. Defendants admit that the U.S. District Court for the Central District of California has subject matter jurisdiction over Plaintiff's claims and personal jurisdiction over the parties. Defendants otherwise deny the allegations in Paragraph 6.

7. Defendants admit that venue is proper in the Central District of California. Defendants otherwise deny the allegations in Paragraph 7.

### BACKGROUND

8. Defendants admit that, on December 3, 2015, Mobile Net POSA, Inc., d/b/a Expo Mobile, and Avi Sharoz Yroshalmiane ("Yroshalmiane"), the owner of assets related to Mobile Net POSA, Inc., entered into an agreement ("the Agreement") with Ignition Wireless, LLC ("Ignition") and that the agreement is not attached to the Complaint. Defendants otherwise deny the allegations in Paragraph 8.

9. Defendants admit that the Agreement provided for the sale of certain assets, including certain intellectual property, belonging to Mobile Net POSA, Inc. and Yroshalmiane to Ignition. Defendants otherwise deny the allegations in Paragraph 9.

PARSONS BEHLE & LATIMER
800 W. Main Street
Suite 1300
Boise, ID 83702
O: (208) 562-4900
F: (208) 562-4901

DEFENDANTS IGNITION WIRELESS, LLC AND NORMAN LEMAY'S ANSWER TO COMPLAINT FOR DAMAGES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT AGAINST THIRD-PARTY DEFENDANTS - 2

10. Defendants admit that the Agreement provides for a "Seller Closing Payment" to be made by Ignition to Yroshalmiane. Defendants otherwise deny the allegations in Paragraph 10.

11. Defendants admit that the Agreement provides for Ignition to make payments "on a monthly basis over a 12-month period beginning on February 1, 2016." Defendants otherwise deny the allegations in Paragraph 11.

12. Defendants admit that the Agreement provides for "Seller Post-Closing Payments" to be made by Ignition to Yroshalmiane, and that such payments were to be made monthly. Defendants otherwise deny the allegations in Paragraph 12.

13. Defendants admit that the Agreement provides that, "[i]n the event [Ignition] fails to timely make all or a portion of the Seller Payment, Seller Payment Guarantor [Norman LeMay] will pay to [Yroshalmiane] within five (5) business days the Seller Payment due *less* any amounts paid by [Ignition] with respect to the Seller Payment." Defendants otherwise deny the allegations in Paragraph 13.

14. Defendants admit that Ignition refused to pay some portion of the Seller Payments after Plaintiff and Yroshalmiane committed numerous, substantial, and material breaches of the Agreement with Ignition. Defendants deny any remaining allegations in Paragraph 14.

15. Denied.

## FIRST CAUSE OF ACTION

(Breach of Written Contract Against All Defendants)

16. Defendants reallege and incorporate herein by reference each of the foregoing paragraphs.

17. Defendants admit that the Agreement provided for Ignition to make monthly Seller Post-Closing Payments. Defendants deny any remaining allegations in Paragraph 17.

18. Denied. As addressed below in Defendants' counterclaim for breach of contract, Plaintiff and Yroshalmiane committed numerous, substantial, and material

PARSONS BEHLE & LATIMER
800 W. Main Street
Suite 1300
Boise, ID 83702
O: (208) 562-4900
F: (208) 562-4901

DEFENDANTS IGNITION WIRELESS, LLC AND NORMAN LEMAY'S ANSWER TO COMPLAINT FOR DAMAGES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT AGAINST THIRD-PARTY DEFENDANTS - 3

breaches of contract that preceded and resulted in the instant litigation, as well as Ignition's failure to pay certain amounts.

19. Denied.

20. Defendants admit that Yroshalmiane demanded that Norman LeMay pay the amounts of Seller Post-Closing Payments allegedly outstanding and that Norman LeMay did not do so. Defendants deny that Norman LeMay had an obligation to do so in light of the numerous, substantial and material breaches of contract

21. Denied.

## SECOND CAUSE OF ACTION
(BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING)

22. Defendants reallege and incorporate herein by reference each of the foregoing paragraphs.

23. Defendants admit that Ignition, Mobile Net POSA, Inc., d/b/a Expo Mobile, and Yroshalmiane entered into the Agreement as described in this Answer. Defendants deny any other allegations in Paragraph 23.

24. Paragraph 24 contains only legal conclusions and therefore does not require a response. To the extent a response is required, the allegations in Paragraph 24 are denied.

25. Denied.

26. Denied.

27. Denied.

## THIRD CAUSE OF ACTION
(Common Law Fraud Against All Defendants)

28. Defendants reallege and incorporate herein by reference each of the foregoing paragraphs.

29. Defendants admit that Jeremy Sands and Norman LeMay executed the Agreement and did so with the intention to abide by its terms. All other allegations in Paragraph 29 are denied.

DEFENDANTS IGNITION WIRELESS, LLC AND NORMAN LEMAY'S ANSWER TO COMPLAINT FOR DAMAGES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT AGAINST THIRD-PARTY DEFENDANTS - 4

1  30. Denied.

2  31. Defendants admit that Jeremy Sands executed the Agreement and did so with the intention to abide by its terms. All other allegations in Paragraph 31 are denied.

4  32. Denied.

5  33. Paragraph 33 contains only legal conclusions and therefore does not require a response. To the extent a response is required, the allegations in Paragraph 33 are denied.

8  34. Denied.

9  35. Denied.

10  36. Defendants are without sufficient information to affirm or deny.

11  37. Denied.

## FOURTH CAUSE OF ACTION

(Negligent misrepresentation Against All Defendants)

14  38. Defendants reallege and incorporate herein by reference each of the foregoing paragraphs.

16  39. Denied.

17  40. Paragraph 40 contains only legal conclusions and therefore does not require a response. To the extent a response is required, the allegations in Paragraph 33 are denied.

20  41. Denied.

21  42. Denied.

22  43. Denied.

23  44. Denied.

24  45. Denied.

25  46. Defendants admit that Ignition accurately conveyed its intention to abide by the terms of the Agreement. All other allegations in Paragraph 46 are denied.

27  47. Denied.

DEFENDANTS IGNITION WIRELESS, LLC AND NORMAN LEMAY'S ANSWER TO COMPLAINT FOR DAMAGES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT AGAINST THIRD-PARTY DEFENDANTS - 5

## FIFTH CAUSE OF ACTION

(Unjust Enrichment Against All Defendants)

48. Defendants reallege and incorporate herein by reference each of the foregoing paragraphs.

49. Defendants admit that Ignition received some money, earnings, and benefits as a result of the Agreement.

50. Denied.

51. Denied.

## PLAINTIFF'S PRAYER FOR RELIEF

Defendants deny that Plaintiff is entitled to any relief, and specifically deny that Plaintiff is entitled to any of the relief set forth in paragraphs 1 through 4 of his Prayer for relief.

## DEFENDANTS' AFFIRMATIVE DEFENSES

### First Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by way of Plaintiff's own prior breach of contract, which was substantial, material, and excused the performance of Defendants.

### Second Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

### Third Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by all defenses to contract formation, including without limitation, false representation, false promise, intentional misrepresentation, negligent misrepresentation and concealment.

### Fourth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by Plaintiff's breach of the covenant of good faith and fair dealing.

DEFENDANTS IGNITION WIRELESS, LLC AND NORMAN LEMAY'S ANSWER TO COMPLAINT FOR DAMAGES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT AGAINST THIRD-PARTY DEFENDANTS - 6

### Fifth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b).

### Sixth Affirmative Defense

Defendants dispute, and have consistently disputed, the amount Plaintiff alleges is owed under the Agreement.

### Additional Defenses

Defendants are presently without knowledge or information sufficient to form a belief whether they may have additional, yet unasserted, affirmative defenses. Defendants therefore reserve the right to assert additional affirmative defenses and matters in avoidance as may be disclosed during discovery.

### DEFENDANTS' PRAYER FOR RELIEF ON PLAINTIFF'S COMPLAINT

Defendants request judgment as follows:

1. That Plaintiff take nothing by way of his complaint, including, without limitation damages, either actual, statutory, or punitive;
2. That Defendants be awarded reasonable attorneys' fees and costs; and
3. For such other and further relief as the Court deems just and proper.

### DEFENDANTS' COUNTERCLAIMS AND THIRD-PARTY CLAIMS AGAINST THIRD-PARTY DEFENDANTS

### JURISDICTION

Defendants bring these counterclaims and third-party claims under federal diversity jurisdiction, 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000, exclusive of interests and costs. The counterclaims and third-party claims asserted herein arise from the same transaction and occurrence as Plaintiff's claim, and the Third-Party Defendant, Avi Sharoz Yroshalmiane, is a necessary party under Fed. R. Civ. P. 19(a) over which the court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

PARSONS BEHLE & LATIMER
800 W. Main Street
Suite 1300
Boise, ID 83702
O: (208) 562-4900
F: (208) 562-4901

DEFENDANTS IGNITION WIRELESS, LLC AND NORMAN LEMAY'S ANSWER TO COMPLAINT FOR DAMAGES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT AGAINST THIRD-PARTY DEFENDANTS - 7

## VENUE

Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1441.

## PARTIES

1. Counterclaimant/Third-Party Plaintiff Ignition Wireless, LLC ("Ignition") is a limited liability company organized under the laws of the State of Washington, with its principal place of business in the State of Washington, and each member of which is a citizen of the State of Washington. Ignition is a telecommunications company that offers prepaid cell phone services.

2. Counterclaimant/Third-Party Plaintiff Norman LeMay ("LeMay"), an individual, is a citizen of the State of Washington.

3. On information and belief, Plaintiff/Counterdefendant Mobile Net POSA, Inc. ("Mobile"), is a corporation organized under the laws of the State of California with its principal place of business in Los Angeles, California. Mobile is a telecommunications company that offers prepaid cell phone services.

4. On information and belief, Third-Party Defendant Avi Sharoz Yroshalmiane ("Yroshalmiane"), an individual, is a citizen of the State of California, is the sole owner and president of Mobile, and has taken actions as herein alleged. As the sole owner and president of Mobile, and as a party to the contract at issue in this litigation and the individual to whom Ignition allegedly owes money under the terms of that contract, Yroshalmiane is a necessary and/or proper party pursuant to Fed. R. Civ. P. 19(a).

5. On information and belief, Third-Party Defendants Does 1 through 10, whose identities are currently unknown, are individuals or business entities that acted as agents of, on behalf of, or in concert with Yroshalmiane and/or Mobile and who are responsible in some manner for the damages alleged herein. Does 1 through 10 will be named explicitly following appropriate discovery.

PARSONS BEHLE & LATIMER
800 W. Main Street
Suite 1300
Boise, ID 83702
O: (208) 562-4900
F: (208) 562-4901

DEFENDANTS IGNITION WIRELESS, LLC AND NORMAN LEMAY'S ANSWER TO COMPLAINT FOR DAMAGES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT AGAINST THIRD-PARTY DEFENDANTS - 8

## BACKGROUND

6. Mobile is a wireless communications services provider that purchases access to network services at wholesale rates and sells access to consumers on a prepaid basis. Mobile previously offered such services under the name "Expo Mobile."

7. Mobile facilitated its business as Expo Mobile through the Expo Mobile website, a network of dealers, and Agent Tools (a web based point of sale and activation system created and maintained by Mobile that permits dealers to quickly access a variety of services).

8. Agent Tools also facilitated the maintenance of a dealer network by permitting dealers—and, through dealers, customers—access to a variety of products through a single, convenient web-based portal.

9. Mobile operated a "Top Up" business through Agent Tools and its associated dealer network that permitted dealers—and, through dealers, customers—to "top-up," or add wireless service minutes to existing accounts quickly and efficiently.

10. In December of 2015, Ignition, Mobile, and Yroshalmiane entered into an Asset Purchase Agreement ("Agreement") in which Ignition purchased the Expo Mobile business and Mobile's Top Up business and brands from Yroshalmiane and/or Mobile.

11. The assets conveyed to Ignition by the Agreement included, without limitation, rights to provide wireless service to existing customers of Expo Mobile, Mobile's Top Up business, Mobile's dealer network, rights under resale wireless contracts necessary to service Expo Mobile's customers, various intellectual property, including the "Expo Mobile" name, and "any and all other assets and rights of [Mobile] necessary or incidental" to provide the services and operate the business previously operated by Mobile through its Top Up business and its business under the name "Expo Mobile."

12. As part of the Agreement, Ignition, Yroshalmiane and/or Mobile also entered into a non-compete agreement in which Mobile and Yroshalmiane agreed not to compete with Ignition in its operation of the businesses acquired in the Agreement.

13. Following the execution of the Agreement, Yroshalmiane and/or Mobile took a variety of actions that breached the Agreement, significantly reduced the value of the assets purchased by Ignition, and interfered with Ignition's business.

### Refusal to Relinquish Control of and Interference With
### the Businesses Acquired by Ignition

14. After executing the Agreement, Yroshalmiane and/or Mobile refused to provide Ignition the source code for Agent Tools, refused to relinquish control of Agent Tools, and continued to exercise control of Agent Tools in a manner that was harmful to Ignition's business and significantly decreased the value of the assets acquired by Ignition in the Agreement.

15. Yroshalmiane and/or Mobile created a "copy," or partial copy, of Agent Tools to be used by Ignition, while Yroshalmiane and/or Mobile maintained the original version of Agent Tools for their own use, continuing to operate and sell services through Agent Tools without Ignition's permission.

16. Both the copy of Agent Tools used by Ignition and associated billing software necessary to the operation of Ignition's business as Expo Mobile and to the operation of the Top Up business remain connected to databases owned and operated by Yroshalmiane and/or Mobile.

17. Because Yroshalmiane and/or Mobile have not provided Ignition the complete source code for Agent Tools, and because Agent Tools and associated billing software remain connected to databases owned and operated by Yroshalmiane and/or Mobile, Ignition has been unable to control its own business operations or resolve technical difficulties when they arise.

18. In addition, Yroshalmiane and/or Mobile continue to exercise control over the copy of Agent Tools used by Ignition and have done so in a manner that significantly diminished the value of the assets purchased by Ignition.

19. In addition, in April of 2016, Yroshalmiane and/or Mobile disabled the credit card merchant accounts associated with Expo Mobile and Agent Tools for a period

of time, preventing any business by Expo Mobile from proceeding. Customers and dealers attempting to make purchases or top-up existing accounts during this period received only error messages.

20. In addition, in May of 2016, Yroshalmiane and/or Mobile removed five distributors of top-up services from Agent Tools without Ignition's knowledge or consent. These distributors represented approximately 1/3 of the total distributors then available through Agent Tools.

21. By dramatically decreasing the products, services and brands available through Agent Tools, Yroshalmiane and/or Mobile diminished the value of Agent Tools to dealers and, as a result, Ignition lost both dealers and customers.

22. In addition, in May of 2016, Yroshalmiane and/or Mobile accessed Ignition's servers, making changes to the code associated with Agent Tools that crippled the Agent Tools portal, causing it to run extremely slowly over a three week period.

23. In addition, following the execution of the Agreement, Ignition contracted with Mobile for the provision of International Long Distance ("ILD") services to Expo Mobile customers.

24. In September of 2016, Yroshalmiane and/or Mobile terminated ILD services provided to Expo Mobile customers.

25. At the time Yroshalmiane and/or Mobile terminated ILD services to Expo Mobile customers, Ignition had fully paid all bills for ILD services provided to those customers.

26. Over a four week period, before Ignition could find a new provider of ILD services, Expo Mobile customers were unable to access ILD services.

27. As a direct and proximate result of the unjustified cancellation of ILD services, Ignition lost a significant number of customers and dealers.

28. In addition, Yroshalmiane and/or Mobile repeatedly refused Ignition access to hosting facilities housing key components of the Sprint services used by Ignition in the Expo Mobile business.

PARSONS BEHLE & LATIMER
800 W. Main Street
Suite 1300
Boise, ID 83702
O: (208) 562-4900
F: (208) 562-4901

DEFENDANTS IGNITION WIRELESS, LLC AND NORMAN LEMAY'S ANSWER TO COMPLAINT FOR DAMAGES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT AGAINST THIRD-PARTY DEFENDANTS - 11

29. Because Ignition was denied access to Sprint hosting facilities, Ignition was unable to resolve technical difficulties associated with Sprint services, including technical difficulties occurring over a three day period—difficulties Yroshalmiane and/or Mobile attributed to a "loose power cord" at the hosting facility—during which Ignition was unable to update customer accounts.

30. In addition, 7G is a vendor that provides toll-free call traffic between customers and the call support center, a service critical and necessary for daily operations of the Expo Mobile and Top Up businesses. Yroshalmiane and/or Mobile intentionally intervened to prevent Ignition from contracting directly with 7G.

31. Instead, Yroshalmiane and/or Mobile convinced 7G to bill services directly to Yroshalmiane and/or Mobile, which then billed Ignition grossly inflated costs for the services provided through 7G.

32. Ignition believes that there are additional examples of Yroshalmiane's and/or Mobile's improper interference with the Expo Mobile and Top Up businesses.

33. As a direct and proximate result of this and related conduct on the part of Yroshalmiane and/or Mobile, Ignition lost a significant number of customers, dealers, and distributors, and the value of the assets purchased by Ignition have significantly declined.

### **Failure to Honor Commission Obligations**

34. Prior to the execution of the Agreement, Yroshalmiane and/or Mobile operated a commission system for dealers, providing financial rewards for sales as part of the Top Up business.

35. At the time the Agreement was executed, Yroshalmiane and/or Mobile owed dealers commissions based upon past sales.

36. Following the execution of the Agreement, and without Ignition's knowledge or permission, Yroshalmiane and/or Mobile "zeroed out" unpaid commissions earned by dealers prior to the execution of the Agreement.

PARSONS BEHLE & LATIMER
800 W. Main Street
Suite 1300
Boise, ID 83702
O: (208) 562-4900
F: (208) 562-4901

DEFENDANTS IGNITION WIRELESS, LLC AND NORMAN LEMAY'S ANSWER TO COMPLAINT FOR DAMAGES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT AGAINST THIRD-PARTY DEFENDANTS - 12

37. As a direct and proximate result of Yroshalmiane's and/or Mobile's conduct, Ignition lost a number of large dealers frustrated with the loss of earned commissions.

### Overcharges and Disputes Regarding Revenue

38. Even after execution of the Agreement, Yroshalmiane and/or Mobile continued to improperly receive revenues associated with the Expo Mobile and Top Up businesses.

39. Rather than directing revenues directly to Ignition, Yroshalmiane and/or Mobile paid certain vendors out of revenue generated by the Expo Mobile and Top Up businesses without consulting Ignition and improperly diverted the remaining revenue to Ignition.

40. Yroshalmiane and/or Mobile did so despite repeated requests from Ignition to direct revenue from the Expo Mobile and Top Up businesses entirely to Ignition.

41. As a result, Ignition was unable to determine whether it received the entirety of the revenue from the Expo Mobile and Top Up businesses, to control its own revenue, and to pay vendors as necessary.

42. In addition, Yroshalmiane and/or Mobile refused to convey invoices for ILD services provided to Ignition by Mobile from January until April of 2016.

43. While Yroshalmiane repeatedly stated that the monthly charges for ILD services averaged $400 per month, the bill that Yroshalmiane and/or Mobile conveyed in April for four months of ILD services totaled $13,321.66. Had Ignition known the amount invoiced each month, Ignition would have switched providers much sooner.

44. In addition, while Ignition agreed to compensate certain Mobile employees in assisting with the transition of the Expo Mobile business from Mobile to Ignition, Yroshalmiane and/or Mobile charged Ignition excessive and unreasonable amounts for those services.

### False and Misleading Financial Statements

45. Prior to the execution of the Agreement, Yroshalmiane and/or Mobile provided Ignition with financial documents that purported to accurately reflect the

DEFENDANTS IGNITION WIRELESS, LLC AND NORMAN LEMAY'S ANSWER TO COMPLAINT FOR DAMAGES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT AGAINST THIRD-PARTY DEFENDANTS - 13

expenses necessary for the operation of the Expo Mobile business and the Top Up business.

46. These documents excluded certain expenses associated with the operation of those businesses—including, without limitation, expenses associated with hosting facilities, Verizon wholesale costs, support for Agent Tools, charge back fees, and merchant fees—and thereby misrepresented the actual operating costs associated with the businesses.

47. Prior to the execution of the Agreement, Yroshalmiane and/or Mobile provided Ignition with financial documents that purported to accurately reflect the revenue associated with the Expo Mobile business and the Top Up business that Ignition was then considering acquiring.

48. These documents included revenue for dealers and distributors that were not part of the dealer network to be acquired by Ignition, and did not reflect the fact that a significant portion of the revenue attributed to the Top Up business was generated through entities that were not part of the dealer network to be acquired by Ignition.

49. When evaluating the value of the businesses and in determining to execute the Agreement, Ignition relied on these documents as accurate representations of the revenue and operating expenses associated with the businesses.

50. In addition, Ignition paid $500,000.00 to acquire a dealer network consisting of approximately 1,000 dealers. Prior to the execution of the Agreement, Yroshalmiane and/or Mobile did not disclose that many of these dealers were in fact owned, operated, or controlled by Yroshalmiane and/or Mobile.

51. The dealers owned, operated, or controlled by Yroshalmiane were removed from or left Agent Tools very shortly after the execution of the Agreement to work directly with Yroshalmiane and/or Mobile.

52. In addition, prior to the execution of the Agreement, Yroshalmiane and/or Mobile did not disclose that Yroshalmiane and/or Mobile were behind on payments to

PARSONS BEHLE & LATIMER
800 W. Main Street
Suite 1300
Boise, ID 83702
O: (208) 562-4900
F: (208) 562-4901

DEFENDANTS IGNITION WIRELESS, LLC AND NORMAN LEMAY'S ANSWER TO COMPLAINT FOR DAMAGES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT AGAINST THIRD-PARTY DEFENDANTS - 14

Sprint and that the minimum deposit requirements were not satisfactory under the terms of the wholesale contract that was assumed by Ignition.

53. As a result, Ignition was required to pay Sprint an additional $130,000 to retain Sprint services, a large and unexpected cost associated with the acquiring and operating the Top Up business and the Expo Mobile business.

## FIRST CAUSE OF ACTION

(Breach of Written Contract)

54. Ignition incorporates by reference all preceding paragraphs as if fully set forth herein.

55. Yroshalmiane and/or Mobile breached the Agreement and the associated non-compete agreement, including, without limitation, by:

    a. refusing to relinquish control of Agent Tools and to provide Ignition with its complete source code;

    b. continuing to operate and sell services through Agent Tools;

    c. failing to honor commissions earned by dealers prior to the Agreement, thereby maintaining the value of the assets purchased by Ignition;

    d. interfering with Expo Mobile business.

56. These breaches occurred despite Ignition's full and complete performance under the terms of the Agreement.

57. These breaches directly and proximately caused harm, damages, and loss to Ignition by depriving Ignition of the assets to which it was entitled under the Agreement and reducing the value of assets that it did acquire.

## SECOND CAUSE OF ACTION

(Breach of the Covenant of Good Faith and Fair Dealing)

58. Ignition incorporates by reference all preceding paragraphs as if fully set forth herein.

PARSONS BEHLE & LATIMER
800 W. Main Street
Suite 1300
Boise, ID 83702
O: (208) 562-4900
F: (208) 562-4901

DEFENDANTS IGNITION WIRELESS, LLC AND NORMAN LEMAY'S ANSWER TO COMPLAINT FOR DAMAGES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT AGAINST THIRD-PARTY DEFENDANTS - 15

59. Under California law, the Agreement includes a covenant of good faith and fair dealing that required Yroshalmiane and Mobile to do nothing to prevent Ignition from enjoying the benefit of the bargain conferred by the Agreement.

60. The acts and omissions of Yroshalmiane and/or Mobile as set forth above, including, without limitation, in paragraphs 14–44, show willful actions and inactions that unfairly prevented Ignition from enjoying the benefits of the bargain contained in and contemplated by the Agreement. Each such act constitutes a breach of the implied covenant of good faith and fair dealing.

61. These breaches occurred despite Ignition's full and complete performance under the terms of the Agreement.

62. These breaches directly and proximately caused harm, damages, and loss to Ignition by depriving Ignition of the assets to which it was entitled under the Agreement and reducing the value of assets that it did acquire.

## THIRD CAUSE OF ACTION

(Fraud)

63. Ignition incorporates by reference all preceding paragraphs as if fully set forth herein.

64. As articulated in paragraphs 45–53, Yroshalmiane and/or Mobile made false statements of material facts to Ignition including, but not limited to, by misrepresenting the revenue and expenses associated with the Top Up business and Expo Mobile business, the value of the dealer network to be acquired by Ignition, and the financial status of Yroshalmiane's and/or Mobile's contract with Sprint.

65. These false statements were made prior to the execution of the Agreement, in or around November of 2015, by Mobile's agents, officers and/or employees, including, but not limited to, Yroshalmiane.

66. Yroshalmiane and/or Mobile knew that these statements were false when they were made.

DEFENDANTS IGNITION WIRELESS, LLC AND NORMAN LEMAY'S ANSWER TO COMPLAINT FOR DAMAGES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT AGAINST THIRD-PARTY DEFENDANTS - 16

PARSONS BEHLE & LATIMER
800 W. Main Street
Suite 1300
Boise, ID 83702
O: (208) 562-4900
F: (208) 562-4901

67. Yroshalmiane and/or Mobile intentionally made these false statements in order to induce Ignition to execute the Agreement and for the sole purpose of their own monetary gain.

68. Ignition justifiably and reasonably relied upon these false statements when it evaluated the viability and value of the Expo Mobile business and the Top Up business and determined to execute the Agreement.

69. Yroshalmiane and/or Mobile were aware that Ignition was relying upon these false statements at the time that it made them.

70. Ignition directly and proximately suffered harm and damage as a result of Yroshalmiane's and/or Mobile's false statements when Ignition was induced to enter into the Agreement under false pretenses, acquiring assets that were significantly less valuable than Ignition was led to believe by Yroshalmiane and/or Mobile, as well as requiring Ignition to expend additional funds to maintain the contract with Sprint acquired in the Agreement.

71. In addition, prior to execution of the Agreement, in or around November of 2015, Yroshalmiane and/or Mobile, through its authorized agents, officers, and/or employees, including, without limitation, Yroshalmiane, lead Ignition to believe that Yroshalmiane and/or Mobile intended to abide by the terms of the Agreement.

72. Instead, Yroshalmiane and/or Mobile intended to breach the Agreement for their financial gain, including by interfering with Expo Mobile's business, refusing to relinquish control of Agent Tools, continuing to operate and sell services through Agent Tools, and refusing to honor dealer commissions earned prior to the execution of the Agreement.

73. These representations by Yroshalmiane and/or Mobile were material because Ignition, and any reasonable party, would not have executed the Agreement had it known that Yroshalmiane and/or Mobile intended to breach it in these ways.

74. Yroshalmiane and/or Mobile knowingly made false representations upon which it intended Ignition to rely, and upon which Ignition reasonably relied.

PARSONS BEHLE & LATIMER
800 W. Main Street
Suite 1300
Boise, ID 83702
O: (208) 562-4900
F: (208) 562-4901

DEFENDANTS IGNITION WIRELESS, LLC AND NORMAN LEMAY'S ANSWER TO COMPLAINT FOR DAMAGES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT AGAINST THIRD-PARTY DEFENDANTS - 17

75. By reason of the foregoing, Ignition is entitled to recover punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Ignition asks the Court for the following relief:

    a. For compensatory damages in an amount to be determined at trial;

    b. For punitive damages;

    c. For costs and attorneys' fees;

    d. For other such relief as the Court deems fair and just.

DATED THIS 9th day of December, 2016.

                                  PARSONS BEHLE & LATIMER


By */s/ Brook B. Bond*
   Brook Bond
Attorney for Defendants
Ignition Wireless, LLC and Norman LeMay

DEFENDANTS IGNITION WIRELESS, LLC AND NORMAN LEMAY'S ANSWER TO COMPLAINT FOR DAMAGES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT AGAINST THIRD-PARTY DEFENDANTS - 18

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 9th day of December, 2016, I electronically filed the within and foregoing instrument with the Clerk of the Court using the CM/ECF system, which caused the following parties and counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

> Benjamin Kiss, Attorneys for Plaintiff
> kisslaw@aol.com

>                    */s/ Brook B. Bond*
>                    Brook B. Bond

PARSONS BEHLE & LATIMER
800 W. Main Street
Suite 1300
Boise, ID 83702
O: (208) 562-4900
F: (208) 562-4901

DEFENDANTS IGNITION WIRELESS, LLC AND NORMAN LEMAY'S ANSWER TO COMPLAINT FOR DAMAGES, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT AGAINST THIRD-PARTY DEFENDANTS - 19